UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN OLNEY REEP,<br><br>    Petitioner,<br><br>  v.<br><br>RALPH DIAZ,<br><br>    Respondent.[1] | No. 2:11-cv-02892 TLN ACP<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2010 conviction for driving under the influence (DUI) causing injury. Respondent has answered, ECF No. 21, and petitioner has filed a traverse. ECF No. 29. For the reasons that follow, the undersigned recommends that the petition be denied on the merits without an evidentiary hearing.

I.    Factual Background

On the evening of November 30, 2007, at approximately 6:00 p.m., petitioner hit an oncoming vehicle while he was speeding and driving on the wrong side of the road in his pickup

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ralph M. Diaz is hereby substituted as respondent in this action as he is the current warden of the California Substance Abuse Treatment Facility where petitioner is confined. See ECF No. 21 at 1.

1

truck. 1 R.T. 12-14, 39-41.[2] Cody Taylor testified that he was driving on Evergreen Road in Tehama County when petitioner passed him and accelerated away from Taylor's vehicle while remaining on the wrong side of the road. 1 R.T. 36-38. The truck was "going all over the road" and "bouncing. . . just as fast as that thing could go." R.T. 36. About a mile further down the road, Taylor arrived at the scene of the accident. 1 R.T. 39. Taylor heard kids screaming and called 911. R.T. 40.

Petitioner's pickup truck had crashed into a VW Jetta driven by 16-year old Justin Daniels. R.T. 196, 266. Justin, who was pinned in the car, suffered broken ribs, a collapsed lung, a concussion, and required a splenectomy as the result of the accident. R.T. 274, 276. Justin's brother Dillon and another passenger, James Hamby, were also injured. R.T. 111, 196-97, 266-69.

Petitioner told police that he was not the driver of the truck, and that the actual driver had fled the scene of the crime. 1 R.T. 115-116.[3] Taylor, however, identified petitioner as the person who was driving the truck when it passed him shortly before the accident. 1 R.T. 41. Taylor also testified that there had been no passengers in the truck when it passed him. R.T. 42. A responding highway patrol officer testified that the truck was in petitioner's name, petitioner was wearing a lanyard with the vehicle's keys around his neck, and that there was no evidence that a second person was driving the car or that anyone had been sitting in the passenger seat. 1 R.T. 116-118. The only footprints in the dirt leading from the driver's side door of the pickup matched petitioner's shoes. R.T. 119-20.

Petitioner failed several field sobriety tests, and a preliminary breath test determined his blood alcohol level to be 0.091 percent by volume. 1 R.T. 131-132. In a subsequent blood test, his blood alcohol level was at 0.06 percent, with marijuana also detected in his system. 1 R.T.

---

[2] "R.T." refers to the one volume of Reporter's Transcripts filed by respondent.
[3] Petitioner identified the other driver as "Jeremy Riddle," a casual acquaintance who frequented the same pool hall as petitioner. R.T. 116. The police investigated, and were unable to identify a Jeremy Riddle. R.T. 182. No one by that name was known to the pool hall operator. R.T. 206. The only local resident with the name "Jeremy Riddle" was a 15-year old boy with no connection to petitioner. R.T. 206, 212.

226, 252-253.

II.     Procedural Background

On April 11, 2008, petitioner was charged by an information in the Tehama County Superior Court with felony DUI causing bodily injury with sentencing enhancements for causing bodily injury to more than one victim, causing great bodily injury, having a prior prison term, and having a prior strike.  1 C.T. 5.[4]  Petitioner was released on bail on April 28, 2008.  1 C.T. 8-9. Petitioner entered a plea of not guilty to all charges on June 23, 2008.  1 C.T. 21.  A trial by jury was set for August 7 and 8, 2008.  1 C.T. 21.  However, on August 7, 2008, petitioner requested that the trial be rescheduled, and the court granted the request on August 11, 2008.  1 C.T. 26-28. The trial was continued until October 30 and 31, 2008.  1 C.T. 28.

After petitioner tested positive for methamphetamine in August 2008, the District Attorney filed a motion to increase petitioner's bail on the DUI charge.  1 C.T. 56, 58.  On September 2, 2008, petitioner failed to appear in court for the hearing on the motion, the court increased his bail, and a bench warrant was issued.  1 C.T. 63.

Approximately one year later, on September 27, 2009, petitioner was arrested for felony failure to appear.  1 C.T. 88.  On September 28, 2009, the next hearing for the DUI charge was set for October 5, 2009.  1 C.T. 89.  Petitioner's initial appearance in court for the failure to appear charge was on September 29, 2009.  1 C.T. 90.  On October 5, 2009, petitioner appeared in court for the DUI charge, and defense counsel requested a jury trial be scheduled for the DUI case.  1 C.T. 92.

On October 26, 2009, petitioner's DUI case and the failure to appear case were consolidated and a jury trial was scheduled for November 19, 2009.  1 C.T. 94.  On November 16, 2009, defense counsel informed the court that he might have a scheduling conflict with another case on November 19, 2009.  1 C.T. 101.  On November 19, 2009, the court set a new trial date of December 3 and 4, 2009.  1 C.T. 102.

Petitioner's trial for failure to appear and felony DUI began on December 3, 2009.  1 C.T.

---

[4] "C.T." refers to the one volume of Clerk's Transcripts filed by respondent in this case.

3

103. At this time, defense counsel made a motion to dismiss the DUI case because petitioner had not been brought to trial within 60 days of his initial court appearance. 1 R.T. 7-10. The trial court denied the motion. 1 R.T. 10. A jury was impaneled for the case that same day. 1 C.T. 103-107.

On December 4, 2009, petitioner changed his plea to guilty as to the felony failure to appear and committing an offense while being released on bail. 1 C.T. 110. On December 9, 2009, a jury found petitioner guilty of felony DUI causing injury and found the special allegations to be true. 1 C.T. 114. He was sentenced to 20 years and 4 months on January 26, 2010. 1 C.T. 238.

### 1. Direct Appeal Proceedings

On appeal, petitioner contended that the trial court violated his constitutional and statutory right to a speedy trial and that the judge erroneously gave the jury an instruction on flight. Lodged Doc. No. 1, at 1 (Appellant's Opening Brief). On March 15, 2011, the California Court of Appeal held that petitioner failed to demonstrate a statutory or constitutional violation of his right to a speedy trial or any jury instruction error. ECF No. 20-1, at 9-10 (Direct Appeal Opinion). The conviction was accordingly affirmed, ECF No. 20-1, at 12, and the California Supreme Court denied review on May 18, 2011. Lodged Doc. No. 6, at 1 (Cal. Supreme Court Docket).

### 2. State Habeas Proceedings

On October 21, 2010, while his direct appeal was pending, petitioner filed a habeas petition in the Tehama County Superior Court challenging the effectiveness of his trial lawyer and the imposition of a sentencing enhancement.[5] Lodged Doc. No. 7 (Petition for Writ of Habeas Corpus). The state court denied habeas relief on November 4, 2010. Lodged Doc. No. 8. On November 14, 2010, petitioner filed a habeas petition in the Court of Appeal, Lodged Doc. No. 9, which was summarily denied on December 2, 2010. Lodged Doc. No. 10. Petitioner filed

---

[5] Petitioner was afforded the benefit of the prison mailbox rule for all state and federal court habeas petitions to the extent they contain a completed proof of service. See Houston v. Lack, 487 U.S. 266 (1988).

a habeas petition with the California Supreme Court on March 14, 2011.  Lodged Doc. No. 11.  On August 31, 2011, the California Supreme Court summarily denied petitioner's habeas application, citing People v. Duvall, 9 Cal. 4th 464, 474 (1995) and In Re Swain, 34 Cal. 2d 300, 304 (1949).  Lodged Doc. No. 12, at 1 (Cal. Supreme Court Docket).

On November 2, 2011, petitioner filed the present habeas corpus action in this court.  ECF No. 1.  The operative pleading before the court is petitioner's second amended habeas corpus petition filed on January 4, 2012.  ECF No. 14.  In his application for habeas corpus relief, petitioner raises four grounds for relief: (1) a violation of his right to a speedy trial; (2) the ineffective assistance of his trial counsel; (3) the unlawful imposition of an illegal sentencing enhancement; and (4) error in instructing the jury on flight.  ECF No. 14.

III.     Standards Governing Habeas Relief under the AEDPA

Based on 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), an application for writ of habeas corpus cannot be granted for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or the decision "was based on an unreasonable determination of the facts." (2011).  The state court's rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary.  Harrington v. Richter, 131 S. Ct. 770, 784-785 (2011) (citing Harris v. Reed, 489 U.S. 255, 265 (1989)).  This presumption can be rebutted "when there is reason to think some other explanation for the state court's decision is more likely."  Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  Clearly established federal law also includes "the legal principles and standards flowing from precedent."  Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)).  Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes an "unreasonable application" of that law.

1  Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044,
2  1057 (9th Cir. 2004).

3        A state court decision is "contrary to" clearly established federal law if the decision
4  "contradicts the governing law set forth in [the Supreme Court's] cases." Williams, 529 U.S. at
5  405. A state court decision "unreasonably applies" federal law "if the state court identifies the
6  correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the
7  particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect
8  in the view of the federal habeas court; the state court decision must be objectively unreasonable.
9  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). State court decisions can be objectively
10 unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to
11 give appropriate consideration and weight to the full body of available evidence, and when they
12 proceed on the basis of factual error. See, e.g., Williams, 529 U.S. at 397-98; Wiggins, 539 U.S.
13 at 526-28, 534; Rompilla v. Beard, 545 U.S. 374, 388-909 (2005); Porter v. McCollum, 130 S. Ct.
14 447, 454 (2009).

15       Relief is also available under AEDPA where the state court predicated its adjudication of
16 a claim on an unreasonable factual determination. 28 U.S.C. § 2254(d)(2). The statute explicitly
17 limits this inquiry to the evidence that was before the state court. An unreasonable determination
18 of facts exists where, among other circumstances, the state court made its findings according to a
19 flawed process -- for example, under an incorrect legal standard, or where necessary findings
20 were not made at all, or where the state court failed to consider and weigh relevant evidence that
21 was properly presented to it, or where petitioner was denied the opportunity to present evidence.
22 See Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004). A
23 factual conclusion can also be substantively unreasonable where it is not fairly supported by the
24 evidence presented in the state proceeding. See, e.g., Wiggins, 539 U.S. at 528 (state court's
25 "clear factual error" regarding contents of social service records constituted unreasonable
26 determination of fact).

27       To prevail, a habeas petitioner must establish the applicability of one of the section
28 2254(d) exceptions and must also affirmatively establish the constitutional invalidity of his

custody under pre-AEDPA standards. Frantz v. Hazey, 533 F.3d 724 (9th Cir. 2008) (en banc). There is no single prescribed order in which these two inquiries must be conducted. Id. at 736-37. The AEDPA does not require the federal habeas court to adopt any one methodology. Lockyer v. Andrade, 538 U.S. 63, 71 (2003).

IV.  Claims for Relief

    A.  Speedy Trial Violation

Petitioner argues that his right to a speedy trial was violated.[6]

        1.  State Court Opinion

Petitioner presented this claim to both the California Court of Appeal and the California Supreme Court. The Court of Appeal was the only state court to issue a reasoned opinion in petitioner's case. This court must review the decision of the California Court of Appeal, which was the last reasoned state court judgment addressing this claim. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."). Where, as here, the state court's adjudication is set forth in a reasoned opinion, section 2254(d)(1) review is confined to "the state court's *actual* reasoning" and "*actual* analysis." Frantz v. Hazey, 533 F.3d at 738 (emphasis in original).

The Court of Appeal rejected petitioner's speedy trial claim on the merits. The appellate court applied the four factors announced in Barker v. Wingo, 4074 U.S. 514 (1972), for resolving speedy trial violations. These include the length of delay, the reason for the delay, defendant's assertion of his right, and prejudice to defendant. Barker, 407 U.S. at 530. The court found that the reason for the majority of the delay in petitioner's case was "attributable to his being a fugitive from justice." ECF No. 21-1 at 9-10. It determined that this factor was enough to find that there was not a violation of petitioner's constitutional right to a speedy trial.

---

[6] To the extent that petitioner claims that the delay violated section 1382(b) of the California Penal Code, petitioner is not entitled to habeas relief based a state court's error in applying state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Therefore, this court will only address the federal constitutional component of the claim presented.

7

2. <u>Clearly Established Federal Law</u>

The United States Constitution provides that criminal defendants have "the right to a speedy and public trial." U.S. Const., amend. VI; see also <u>Doggett v. United States</u>, 505 U.S. 647, 651 (1992). In <u>Barker</u>, the Supreme Court held that the determination of whether a defendant's right to a speedy trial was violated is a fact-based inquiry that requires balancing various factors of the case including the: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. 407 U.S. 514, 530 (1972). The length of delay serves as a "triggering mechanism," and if there is not a delay which is presumptively prejudicial, then there is no reason to consider the other balancing factors. <u>Id.</u>

In <u>Doggett</u>, the Supreme Court stated that lower courts have generally attached a presumption of prejudice, sufficient to trigger a <u>Barker</u> inquiry, when the delay "approaches one year." 505 U.S. at 652, n.1. The Ninth Circuit has found a six-month delay sufficient to trigger an analysis of the other three <u>Barker</u> factors. See <u>United States v. Valentine</u>, 783 F.2d 1413, 1417 (9th Cir. 1986); <u>United States v. Simmons</u>, 536 F.2d 827, 831 (9th Cir. 1976) (finding that a six-month delay was presumptively prejudicial where the charge was for forgery rather than a "serious, complex conspiracy charge") (citation omitted).

3. <u>Analysis</u>

The Court of Appeal decision rejecting petitioner's speedy trial claim was not an unreasonable application of the Supreme Court's decision in <u>Barker</u>. First, the length of the delay is presumptively prejudicial in this case, and warranted review of the other <u>Barker</u> factors. The length of delay is measured from the date the district attorney first filed an information and charged petitioner with felony DUI. <u>United States v. Marion</u>, 404 U.S. 307, 320 (1971) ("[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment."). Petitioner was first charged with felony DUI and various special allegations on April 11, 2008. His trial began on December 3, 2009. Therefore, the period of delay between the formal charge and his trial was approximately one year, seven months, and 23 days. Since the Ninth Circuit has found six months to raise the presumption of

prejudice in a straightforward felony prosecution, this almost two-year delay for the simple charge of felony DUI is also sufficient to trigger an inquiry into the other three Barker factors. See United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir. 1986); United States v. Simmons, 536 F.2d 827, 831 (1976). As the Supreme Court has noted, most courts consider delays of more than one year to be presumptively prejudicial. Doggett, 505 U.S. at 652, n.1. Accordingly, it was reasonable for the Court of Appeal to proceed to the other Barker factors.

Second, as the Court of Appeal observed, the reason for the delay weighs heavily against a speedy trial violation since the fault for the majority of the delay lies with petitioner. Petitioner's original trial date was set for August 7 and 8, 2008, which was approximately four months after he was formally charged for the felony DUI. However, petitioner requested a later trial date, and the court granted his request and set the trial for October 30 and 31, 2008. The Supreme Court has held that "delays caused by defense counsel are properly attributed to the defendant, even where counsel is assigned." Vermont v. Brillon, 556 U.S. 81, 85, 94 (2009) (finding that assigned defense counsel are not state actors). Absent a situation where delay can be attributed to "a systemic breakdown in the public defender system," defense counsel's requests for time extensions will be considered delays caused by the defendant. Id. at 94. Therefore, the cause of this initial delay between August 7, 2008 and October 30, 2008 rests with the defendant. See id. at 85, 94.

Furthermore, the majority of the next one year delay was based on petitioner's own actions to avoid trial. On September 2, 2008, petitioner failed to appear for a hearing to increase his bail. On September 27, 2009, over a year later, he was arrested for his failure to appear at the hearing. This more than one-year delay was attributable to the petitioner since it was caused by his failure to appear at the bail hearing. Thus, the longest delay was due to petitioner's own actions and weighs against finding a speedy trial violation.

After petitioner's re-arrest, the charges for felony DUI and his failure to appear were consolidated and trial was set for November 19, 2009. Then, on November 19, 2009, defense counsel was in another trial that day and all parties agreed, upon defense counsel's request, to move the trial date to December 3, 2009. Here again, the delay of a few weeks was caused by

petitioner's own request for a continuance since the actions of his defense counsel are attributed to him.  See Vermont, 556 U.S. at 85, 94.

In total, petitioner is responsible for more than one year and two months of the delay. Therefore, the main reason for the delay of his trial date was petitioner's own actions, and, as the Court of Appeal determined, this factor weighs against his claim for a speedy trial violation. The Court of Appeal found the reason for delay alone was dispositive of petitioner's speedy trial claim and did not find it necessary to consider the other Barker factors.  This finding was not objectively unreasonable.

Moreover, review of the other Barker factors further supports the result reached by the state court. Petitioner did not assert his right to a speedy trial until December 3, 2009, the first day of his trial.  Assertion of the right to a speedy trial is not a requirement for a speedy trial violation, but failing to assert that right "make[s] it difficult for a defendant to prove that he was denied a speedy trial."  Barker, 407 U.S. at 531-32.  Here, petitioner did not object to any of the continuances on the basis of his right to a speedy trial.  He sat on his rights and then raised a speedy trail claim only after he believed that the state speedy trial clock had expired. Accordingly, this factor weighs against his speedy trial claim.

Finally, petitioner does not point to any prejudice he suffered.  In Barker, the Supreme Court held that the defendant's right to a speedy trial was not violated, in part, because he was only minimally prejudiced by the delay.  407 U.S. at 534, 536.  In considering prejudice to the defendant, the court must look to three specific interests that the right to a speedy trial is meant to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired.  Id. at 532.  The final factor is to be given the most weight in the analysis, and a clear example of an impaired defense, is the death or disappearance of a witness during the delay.  Id.  In Barker, the Supreme Court found that the defendant was only minimally prejudiced by his 10-month jail time, four years of living under a "cloud of suspicion and anxiety," and two minor witness memory lapses. Id. at 533-34.  This minimal prejudice was outweighed by the fact that no witnesses died or were otherwise unavailable by the time of petitioner's trial.  Id.  Here, petitioner's pretrial incarceration

10

cannot be considered oppressive because he was only in custody for a total period of 183 days (approximately six months) out of the almost two-year period before trial. Similar to Barker, petitioner's six-month incarceration, without any loss of a defense witness, is not enough to establish prejudice. See id. Accordingly, this factor favors rejecting petitioner's claim for a speedy trial violation.

In balancing the Barker factors, there is no indication that petitioner's right to a speedy trial was violated. The length of the delay was long for a felony DUI, but most of the delay was caused by petitioner's own failure to appear. Additionally, petitioner did not assert his right to a speedy trial until the day of trial and the prejudice to the petitioner was only minimal, despite a six-month period in jail. Accordingly, the state court's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Habeas relief should be denied on this claim.

### B. Ineffective Assistance of Counsel

Petitioner argues that his attorney should have subpoenaed three pieces of additional evidence: his medical records, medical records from a passenger of the other vehicle, and testimony of the first witness at the scene of the accident. First, he contends that his medical records would have shown that he had injuries on his right shoulder that are consistent with seat belts on the passenger side rather than on the driver's side of the vehicle. Next, he claims that medical records of then 14-year old Dillon Daniels would have shown that he was actually the driver of the other vehicle and not his 16-year old brother Justin Daniels. Finally, he argues that the first witness at the scene of the accident may have testified that the driver of the other vehicle in the accident was not following traffic laws at the time of the accident and was actually cited by the California Highway Patrol for transporting minors under 20 years old within the first twelve months of issuance of a driver's license. ECF No. 29-1 at 22.[7]

---

[7] In his traverse, petitioner expands his ineffective assistance of counsel claims to include counsel's failure 1) to raise vital evidentiary objections; 2) to adequately cross-examine a prosecution witness; 3) to challenge prosecutorial misconduct; and, 4) to object to the flight instruction. ECF No. 29 at 12. Petitioner also alleges that based on the numerous errors committed by trial counsel, prejudice should be measured cumulatively. Id. Because a "traverse (continued…)

1   Respondent asserts that petitioner's ineffective assistance of counsel claims are unexhausted based on the California Supreme Court's citation to People v. Duvall, 9 Cal.4th 464, 474 (1995), and In re Swain, 34 Cal.2d 300, 304 (1949). ECF No. 21 at 10-11. Dismissal of the unexhausted claims is therefore appropriate. ECF No. 21 at 11 (citing Harris v. Superior Court, 500 F.2d 1124, 1128 (9th Cir. 1974) (en banc) (stating that "[i]f the denial of the habeas corpus petition includes a citation of an authority which indicates that the petition was procedurally deficient … then the available state remedies have not been exhausted….")). However, in the alternative, respondent suggests that these claims can be denied on the merits since it is perfectly clear that petitioner is not entitled to relief. ECF No. 21 at 11-12 (citing Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005)); see also 28 U.S.C. § 2254(b)(2).

   1.   Standard of Review

In light of the California Supreme Court's citations to Duvall and Swain, this court must first determine whether petitioner has properly exhausted his ineffective assistance of counsel claims in state court. The citations to Duvall and Swain reference the California rule that, to meet his initial burden of pleading adequate grounds for relief, a California habeas petitioner must state fully and with particularity the facts upon which relief is sought. See People v. Duvall, 9 Cal.4th at 474; In re Swain, 34 Cal.2d at 303–04; see also Gaston v. Palmer, 417 F.3d 1030, 1038–39 (9th Cir. 2005), modified on other grounds, 447 F.3d 1165 (9th Cir.2006), cert. denied, 549 U.S. 1134, ("In light of its citations to Swain and Duvall, we read the California Supreme Court's denial of [the petitioner's] … habeas application as, in effect, the grant of a demurrer, i.e., a holding that [the petitioner] has not pled facts with sufficient particularity."). The failure to meet the pleading requirements of Duvall and Swain can be cured in a renewed petition. See Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986). However, in this case, petitioner did not file any subsequent state habeas petition in the California Supreme Court. Therefore, the California Supreme Court's denial of petitioner's habeas application with citations to Duvall or Swain constitutes the last

---

is not the proper pleading to raise additional grounds for relief," these subclaims are not properly before the court and will not be considered. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994).

1 reasoned state court opinion on petitioner's ineffective assistance of counsel claims. As a result,
2 these claims are unexhausted. See Kim, 799 F.2d at 1319. However, because these claims have
3 no merit, as will be discussed below, the undersigned recommends denying relief on the merits.
4 See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the
5 merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts
6 of the State.").

7 In concluding that these claims are unexhausted, the undersigned next considers the
8 standard of review to apply when reviewing these claims. Here the unexhausted claims will be
9 reviewed de novo because there is no state court decision adjudicating the claim, and therefore no
10 decision to defer to under the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"). See,
11 e.g., Cassett v. Stewart, 406 F.3d 614, 623 (9th Cir. 2005); Pirtle v. Morgan, 313 F.3d 1160, 1167
12 (9th Cir. 2002) (federal habeas court reviews unexhausted claim de novo).

### 2. Clearly Established Federal Law

14 To establish a constitutional violation based on ineffective assistance of counsel, a
15 petitioner must show (1) that counsel's representation fell below an objective standard of
16 reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v.
17 Washington, 466 U.S. 668, 692, 694 (1984). Prejudice exists when "there is a reasonable
18 probability that, but for counsel's unprofessional errors, the result of the proceeding would have
19 been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine
20 confidence in the outcome." Id. The court need not address both prongs of the Strickland test if
21 the petitioner's showing is insufficient as to one prong. Id. at 697 ("If it is easier to dispose of an
22 ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be
23 so, that course should be followed.").

### 3. Analysis

25 Petitioner's first two claims of ineffective assistance of counsel are based on the failure to
26 request his medical records and the medical records of Dillon Daniels (a 14-year old passenger of
27 the other vehicle in the accident). Petitioner argues that his own medical records would have
28 shown injuries on the right side of his body consistent with wearing a passenger-side seat belt,

13

1  and he states that this evidence would have confirmed his statement to police that he was not
2  driving the vehicle at the time of the accident.  Additionally, judging by his original petition for
3  habeas relief in state court, petitioner contends that the medical records of Dillon Daniels would
4  have proven that he was the driver of the other vehicle.  Petitioner states that the records would
5  show that Dillon Daniels was the only person in the other vehicle who had ankle injuries.  Since
6  the driver of the other vehicle had to have his ankle extracted by the fire department, petitioner
7  reasons that the ankle injuries would provide proof that the underage Dillon Daniels was the
8  driver and not his 16-year old brother.

9  Petitioner has presented no evidence that these allegedly exculpatory medical records
10 exist,[8] much less that they do indeed show that his own injuries are consistent with a passenger-
11 side seat belt or that Dillon Daniels was the only party with ankle injuries.  In an ineffective
12 assistance of counsel claim, petitioner must provide "sufficient evidence for a reasonable fact
13 finder to conclude" that the result at trial would have been altered had counsel taken a different
14 course of action.  Nunes, 350 F.3d at 1054 (citing Strickland, 466 U.S. at 694); see also James v.
15 Borg, 24 F.3d 20, 26 (1994) (factually unsupported claim is conclusory and does not warrant
16 habeas relief).

17 Even assuming that the medical records exist and petitioner could show deficient
18 performance by counsel, his ineffective assistance of counsel claim nevertheless fails based on
19 lack of prejudice.  In proving prejudice, petitioner must show that "there is a reasonable
20 probability that, but for counsel's unprofessional errors, the result of the proceeding would have
21 been different."  Strickland, 466 U.S. at 694.  Petitioner suggests that the driver of the other
22 vehicle was responsible for the accident, and that showing that the real driver was underage
23 would support this argument.  However, even accepting that the driver of the other vehicle was
24 underage, that does not lead to the logical conclusion that the youngster was responsible for the

---

[8] The medical records of Dillon Daniels, Justin Daniels and James Hambly were entered into evidence at petitioner's trial, R.T. 278-79, although no medical testimony was presented. Petitioner does not demonstrate that these records support his theory, or that the records presented to the jury were incomplete.  In any case, it is manifestly untrue that defense counsel failed to obtain the victim's medical records, which were produced by the prosecution.

1    accident, especially in light of all the testimony about petitioner's intoxication and his rapid and
2    erratic driving before the accident.  Evidence that the driver of the other car was 14 and not 16 is
3    not reasonably likely to have convinced a fact finder to acquit petitioner of felony DUI.
4    Therefore, the undersigned recommends denying this ineffectiveness claim based on lack of
5    prejudice.
6         Petitioner's second claim is that counsel should have called the first witness at the scene
7    of the crime who would have testified that the driver of the other vehicle was violating traffic
8    laws at the time of the accident.  Connected to this claim is petitioner's argument that defense
9    counsel should have argued that the other driver was responsible for the accident.  The Ninth
10   Circuit has held that there is no ineffective assistance of counsel for failure to call a witness when
11   there is "no indication of what these witnesses would have testified to, or how their testimony
12   might have changed the outcome of the hearing."  United States v. Berry, 814 F.2d 1406, 1409
13   (9th Cir. 1987).  Here, petitioner has not provided any evidence that there was a witness to the
14   accident who would have testified that the other driver was at fault for the accident.  Indeed, the
15   trial transcript clearly suggests that the first person to arrive on the scene of the accident was
16   Cody Taylor, who provided significant evidence against petitioner.  To the extent that petitioner
17   relies on the California Highway Patrol report citing the other driver for having minor passengers
18   in the car, the officer's conclusion in the same report clearly indicates that petitioner's
19   intoxication was the cause of the accident.  See ECF No. 29-1 at 22.  As a result, petitioner has
20   failed to demonstrate prejudice.  Given the overwhelming evidence against petitioner, he cannot
21   show a reasonable probability that one witness would have changed the outcome of the trial
22   simply by testifying that the other driver was breaking a traffic law at the time of the accident.
23   Accordingly, habeas relief is not warranted on this claim.
24        C.    Illegal Sentencing Enhancement
25        In his third claim for relief petitioner argues that the court imposed an illegal enhancement
26   by sentencing him to an additional five years.  He states that California Penal Code 969(f)
27   requires that a defendant have spent one year in prison before an enhancement can be imposed,
28   but he makes no claim that the interpretation of this state statute violated his constitutional rights.

15

1    Accordingly, this is merely a state law claim that is not cognizable on habeas. See Estelle v.

2    McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to

3    reexamine state-court determinations on state-law questions."). Thus, petitioner is not entitled to

4    relief based on the assertion the state court erred in applying California Penal Code § 969(f).

D.    Flight Instruction

In petitioner's last claim for relief, he asserts that the jury was erroneously given an instruction on flight. Petitioner argues that the jury was incorrectly instructed on flight because he stayed after the accident to assist the other parties and did not flee from the scene of the incident. As such, he claims that there was not sufficient evidence to give the flight instruction.[9] However, he concedes that he failed to appear for a bail hearing approximately one year later. The court liberally construes petitioner's present petition for habeas relief and also analyzes the constitutional argument raised in his direct appeal brief before the California Court of Appeal. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (stating that pro se pleadings are to be liberally construed).

1.    State Court Opinion

Petitioner raised this claim on direct appeal to the California Court of Appeal and the California Supreme Court. The Court of Appeal was the only state court to issue a reasoned opinion, and it rejected petitioner's claim. The state court's decision on this claim rested entirely on the court's interpretation of state law regarding the sufficiency of evidence supporting the flight instruction. Since the decision was based exclusively on the interpretation of state law rather than federal law, the presumption of a merits-based determination does not apply and de novo review is appropriate as to this claim for relief. See Reynoso v. Giurbino, 462 F.3d 1099,

---

[9] In so far as petitioner's claim rests on an alleged violation of state law regarding the definition of flight and whether there is a temporal limitation on evidence that can be used to support a flight instruction, petitioner is not entitled to habeas relief based on a state court's error in applying state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (distinguishing between state law and federal constitutional claims); see also Menendez v. Terhune, 422 F.3d 1012, 1028-29 (9th Cir. 2005) ("Any error in the state court's determination of whether state law allowed for an instruction in this case cannot form the basis for federal habeas relief.").

1109 (9th Cir. 2006).

### 2. Clearly Established Federal Law

To be granted habeas relief based on an erroneous jury instruction, petitioner must show that the instruction violated his due process rights. See Estelle v. McGuire, 502 U.S. 62, 72 (1991) ("The only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973))). In proving such a violation, the challenged jury instruction "cannot be merely 'undesirable, erroneous, or even 'universally condemned,' 'but must violate some due process right guaranteed by the Fourteenth Amendment.'" Cupp, 414 U.S. at 146. If petitioner shows there was a due process violation, then habeas relief is still not warranted unless the "error 'had a substantial and injurious effect or influence in determining the jury's verdict,'" which resulted in "actual prejudice" to the petitioner. Brecht v. Abrahamson, 507 U.S. 619, 637-38, (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

### 3. Analysis

In the instant case, the jury was given the following instruction: "The flight after he is accused of a crime is not sufficient in itself to establish the defendant's guilt, but is a fact which, if proved, may be considered by you in light of all other proved facts in deciding whether a defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide." 1 R.T. 323.

As to petitioner's claim that the flight instruction was improper because he did not flee the scene of the crime, petitioner himself pled guilty to failing to appear at a bail hearing. The jury was advised of petitioner's mid-trial change of plea on the failure to appear count. R.T. 193. Petitioner's own admission that he failed to appear was sufficient evidence to warrant an instruction on the jury's ability to consider this evidence and make their own determinations if his failure to appear constituted flight. See McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994) (instructing on flight was proper, even though there was an issue as to identity of the person fleeing, where the prosecution made a strong showing that it was the defendant who fled based on fingerprint evidence at the crime scene).

1 	Next, the jury instruction did not violate petitioner's due process rights because the
2 instruction's language did not indicate to the jury that evidence of flight created a presumption of
3 guilt. Francis v. Franklin, 471 U.S. 307, 314 (1985) (finding that a jury instruction is not
4 unconstitutional if it allows a permissive rather than mandatory inference from a jury based on
5 certain predicate information). A "permissive inference instruction" is allowable if it only
6 "suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but
7 does not require the jury to draw that conclusion." Francis v. Franklin, 471 U.S. 307, 314 (1985).
8 An instruction violates the Due Process Clause only if it provides "mandatory presumptions" that
9 "relieve the State of the burden of persuasion on an element of an offense." Id. (citing Patterson
10 v. New York, 432 U.S. 197, 215 (1977)). In other words, if the judge instructs the jury that they
11 "must infer the presumed fact" based on evidence provided by the government, then the
12 instruction is unconstitutional. Id. at 314-15.

13 	Finally, petitioner cannot show that there was a "substantial and injurious effect" from the
14 flight instruction. See Brecht, 507 U.S. at 637. As the Ninth Circuit has found, such jury
15 instructions may actually protect defendants by instructing jurors to consider evidence of flight
16 along with the other facts of the case and not to presume that flight is sufficient on its own to
17 prove guilt. See Karis v. Calderon, 283 F.3d 1117, 1132 (9th Cir. 2002), cert. denied, 539 U.S.
18 958 (2003). In this sense, the instruction could have helped soften the effect of petitioner's
19 failure to appear, but, even if the instruction did not help him, it was framed in such a way that
20 would not have substantially injured his case. Id. (holding that a flight instruction did not
21 prejudice defendant where the instruction "clarified that flight alone is insufficient to establish
22 guilt" and "did not direct the jury to ignore [defendant's] explanation for his flight"). Based on
23 the above analysis, petitioner's due process rights were not violated by the flight instruction, and,
24 in any case, the instruction did not prejudice the petitioner. The undersigned therefore
25 recommends denying petitioner's claim.

26 V.	Request for Evidentiary Hearing

27 	Petitioner filed a request for an evidentiary hearing on the same date that he filed his
28 traverse. ECF No. 28. He requested an evidentiary hearing in order to: 1) gather and obtain

evidence; 2) gather and present medical records; and, 3) obtain and subpoena witnesses and other records and property to support his claims for relief. Id. at 1. Respondent opposes the evidentiary hearing request asserting that to the extent that any claims in the petition are unexhausted, an evidentiary hearing is not warranted. ECF No. 31 at 3 (citing Schriro v. Landrigan, 550 U.S. 465, 474 (2007)). With respect to the exhausted claims, respondent contends that an evidentiary hearing is barred by Cullen v. Pinholster, 131 S. Ct. 13881 (2011), because any new evidence to be presented at the evidentiary hearing was not first presented to the state court. ECF No. 31 at 3-4. In reply, petitioner argues that he has properly exhausted all of his claims. ECF No. 33.

The decision to grant an evidentiary hearing is generally a matter left to the sound discretion of the district courts. 28 U.S.C. § 2254; Habeas Rule 8(a); Schriro v. Landrigan, 550 U.S. 465, 473 (2007). To obtain an evidentiary hearing in federal court under the AEDPA, a petitioner must allege a colorable claim by alleging disputed facts which, if proved, would entitle him to relief pursuant to 28 U.S.C. § 2254(d)(1). Schriro, 550 U.S. at 474. In analyzing a claim pursuant to § 2254(d)(1), a federal court is limited to the record that was before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011). Thus, when a state court record precludes habeas relief under the limitations set forth in § 2254(d), a district court is not required to hold an evidentiary hearing. Cullen v. Pinholster, 131 S.Ct. at 1399 (citing Schriro, 550 U.S. at 474)).

Here, the undersigned has already determined that petitioner is not entitled to relief under 28 U.S.C. § 2254(d)(1) because he has not demonstrated that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Accordingly, any attempt to present new evidence in the first instance to the federal court is barred by Pinholster. The undersigned therefore recommends denying petitioner's request for an evidentiary hearing.

VI.     Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 14) be denied;

2. Petitioner's request for an evidentiary hearing (ECF No. 28) also be denied; and,

3. His request for a ruling (ECF No. 38) be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).   Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 29, 2014

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE